1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   NAMRATA C. PATEL, DDS,                    Case No.  12-cv-04719-WHO

              Plaintiff,
8
                                              **ORDER ON MOTION FOR PARTIAL**
9        v.                                   **SUMMARY JUDGMENT**

10  AMERICAN ECONOMY INSURANCE                Re: Dkt. No. 47
    COMPANY, et al.,
11
              Defendants.

12          On October 14, 2009, a fire in the basement of a commercial building caused smoke

13  damage to the dental office of plaintiff Namrata Patel.  She had an insurance policy with defendant

14  American Economy Insurance that covered, among other things, direct physical damage, loss of

15  business income for twelve months after the date of the loss, and necessary extra expenses.  Patel

16  seeks current loss of business income because she was forced to relocate her business when the

17  building closed for repairs in 2014.  She also claims coverage of $50,275 for a feng shui

18  consultant she hired before reopening the office after the fire.  Because any lost business income

19  suffered more than twelve months after the fire is not covered by the policy, and because feng shui

20  services are not covered since they are not a direct physical loss or damage nor a necessary "extra

21  expense," I will GRANT American Economy's motion for partial summary judgment.[1]

22                          **FACTUAL BACKGROUND**

23          After discovering the smoke damage caused by the fire, Patel submitted claims to

24  American Economy in 2009 and 2010 for various items, including damage to dental and electronic

25  equipment, cleaning and repair costs, inventory replacement, and lost business income.  Atwood

26  Decl. Exs. D, I, L.  One of the items claimed was "Five Elements Feng Shui Invoice" in the

27

28  ───────────────────────
    [1] There are remaining disputes concerning coverage that are not resolved by this Order.

United States District Court
Northern District of California

1  amount of $50,275 for a feng shui consultant who "had to come in and change crystals and

2  perform additional cures to help to restore the location to its original condition." *Id.*, Ex. L.

3  American Economy investigated Patel's claims and determined that some claims were covered by

4  the policy, but that other claims were not covered or were not valid.  *See Id.* Exs. M, S (detailing

5  approved and rejected claims).  American Economy determined that the feng shui consultant costs

6  were not covered by the policy because "it is not a necessary expense to restore the premises to its

7  pre-loss condition" and "does not meet the definition of direct physical loss of or damage to

8  covered property." *Id.*, Ex. M.  American Economy paid Patel a total of $114,703.29 under the

9  policy, consisting of $74,950.50 for business personal property and $39,752.79 for business

10  income loss.  *Id.* ¶ 26.

11       On December 30, 2011, Patel filed this action alleging causes of action for breach of

12  contract for American Economy's failure to pay amounts allegedly due under the policy, and

13  breach of the implied covenant of good faith and fair dealing for American Economy's alleged

14  mishandling of Patel's claims.  *See* Notice of Removal, Dkt. No. 1.

15       On January 8, 2013, Patel received a notice from the building owner regarding its plan to

16  replace the building's air ducts due to damage caused by the fire, which would require each tenant

17  to temporarily vacate the premises for several months in 2014.  Cogan Decl., Ex. KK.  On July 8,

18  2013, Patel presented a supplemental claim to American Economy for additional business personal

19  property, business income loss, and extra expenses that she anticipated incurring as a result of

20  vacating the premises and potentially relocating to another building.  Atwood Decl. Ex. T.  The

21  claim also contends that American Economy knew, but failed to disclose, that Patel would be

22  required to vacate the premises and would incur further losses.  *Id.*  American Economy denied the

23  new claim on the basis that the policy limits coverage to losses that occur "within 12 consecutive

24  months after the date of direct physical loss or damage." *Id.* Ex. U.

**LEGAL STANDARD**

26       Summary judgment on a claim or defense is appropriate "if the movant shows that there is

27  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

28  law." FED. R. CIV. P. 56(a).  In order to prevail, a party moving for summary judgment must show

2

the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

American Economy moves for partial summary judgment and asserts that: (i) the claim for anticipated future business income losses in 2014 is not covered under the terms of the policy; (ii) the claim for feng shui consultant fees is not covered under the policy; and (iii) Patel's second cause of action for breach of the implied covenant of good faith and fair dealing fails because it acted reasonably when it denied parts of Patel's claims and because a "genuine dispute" existed as to the amounts due under the policy. Dkt. No. 47. I will address each argument in turn.

## I.  PATEL'S INSURANCE POLICY

The insurance policy American Economy issued to Patel states, in pertinent part:

SECTION I – PROPERTY

A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

    1. Covered Property
    Covered Property includes Buildings as described under Paragraph a. below,
    Business Personal Property as described under Paragraph b. below, or both,

United States District Court
Northern District of California

depending on whether a Limit of Insurance is shown in the Declarations for that type of property.

. . .

    b. Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within [1,000] feet1 of the described premises, including:

        (1) Property you own that is used in your business;

. . .

        (3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alternation, installations or additions:

            (a) Made a part of the building or structure you occupy but do not own; and

            (b) You acquired or made at your expense but cannot legally remove;

5. Additional Coverages

    f. Business Income

        (1) Business Income

            (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss . . . .

            (b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage . . . .

            (c) Business Income means the:

            (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

            (ii) Continuing normal operating expenses incurred, including payroll.

    g. Extra Expense

        (1) We will pay necessary Extra Expense you incur during the "period of

United States District Court
Northern District of California

restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises . . . .

(2) Extra Expense means expense incurred:

    (a)  To avoid or minimize the suspension of business and to continue "operations":
        (i) At the described premises; or
        (ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

    (b) To minimize the suspension of business if you cannot continue "operations".

    (c) To:
        (i) Repair or replace any property; or
        (ii) Research, replace or restore the lost information on damaged "valuable papers and records" to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f. Business Income

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

    (a) The partial slowdown or complete cessation of your business activities; or
    (b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. . . .

. . .

9. "Period of Restoration":

    a.   Means the period of time that:

    (1) Begins:
        (a) Immediately after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises3; or
        (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises; and

    (2) Ends on the earlier of:
        (a)The date when the property at the described premises should be

repaired, rebuilt or replaced with reasonable speed and similar quality; or

(b) The date when business is resumed at a new permanent location.

Hager Decl., Ex. A. at 00016, 00021-23, 00046.

## II.  THE CLAIM FOR BUSINESS INCOME LOST IN 2014 IS NOT COVERED UNDER THE POLICY

Patel's insurance policy limits coverage for "business income" to losses that occur "during the 'period of restoration' and that occurs within 12 consecutive months after the date of direct physical loss or damage."  Hager Decl., Ex. A at 00021.  American Economy argues that this language "precludes coverage for any business income losses that occur after October 14, 2009," which is 12 months from the date of the fire that caused damage to Patel's dental office.  Reply Br. 2.

Patel argues that that American Economy's interpretation of the 12-month limitation is wrong.  Opp. 14.  After the 2009 fire, Patel temporarily closed her dental office and resumed operations one month later.  Opp. 15.  Patel claims that because she only closed her dental office for one month, "she did not exhaust the limitation" and "she is still entitled to eleven more months of business interruption coverage."  Opp. 14.  She asserts that the 12-month time period "can be commenced at any time at the election of the insured" and that she "is still entitled to those months for business interruption payments."  *Id.*

Patel's interpretation is not supported by the policy language and American Economy did not breach its insurance contract by refusing to pay her claim for business income losses that she anticipates incurring as a result of vacating the building in 2014.  Br. 17-19. Insurance policies are contracts to which the normal rules of contractual interpretation apply.  *Shaw Mortgage Corp. v. Peerless Ins. Co.*, 615 F. Supp. 2d 1172, 1176 (S.D. Cal. 2009) (citing *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)).  The mutual intention of the parties is to be inferred, if possible, solely from the written provisions of the contract.  If the policy language is "clear and explicit," it governs.  *Id.* (citing *Bank of the West*, 2 Cal. 4th at 1264).  The "Business Income" section of American Economy's insurance policy states, "We will only pay for loss of Business Income that you sustain during the 'period of restoration' and that occurs within 12

1    consecutive months after the date of direct physical loss or damage." Hager Decl., Ex. A. Patel's

2    interpretation that business income may be claimed for any 12 months in the future after the

3    casualty ignores the words "within 12 *consecutive* months." Patel fails to offer any support for her

4    argument that that the 12 months "can be commenced at any time at the election of the insured."

5         Patel argues that "the period of restoration is still ongoing because the building that Patel's

6    practice is located has not been repaired or rebuilt and Patel has merely temporarily resumed her

7    operations . . . ." Opp. 13. Patel points to the policy language stating that the "period of

8    restoration" begins on the date of loss, and ends on "(a) The date when the property at the

9    described premises should be repaired, rebuilt, or replaced with reasonable speed and similar

10   quality; or (b) The date when business is resumed at a new permanent location." Opp. 13. Even if

11   the period of restoration is ongoing, coverage for "Business Income" is specifically limited to

12   losses that occur "during the period of restoration *and* that occurs within 12 consecutive months"

13   from the date of loss. Hager Decl., Ex. A at 00021. Patel appears to assert that business income

14   loss coverage exists during the period of restoration, regardless of whether 12 months from the

15   date of loss has run. This interpretation renders the word "and" meaningless -- a result I must

16   avoid. *United States v. Hathaway*, 242 F.2d 897 (9th Cir. 1957) ("A fundamental rule of

17   construction is that a court must give effect to every word or term employed by the parties and

18   reject none as meaningless or surplusage in arriving at the intention of the contracting parties.").

19        Since the date of "direct physical loss or damage" was October 14, 2009, any claim for

20   business income or extra expenses in 2014 is well outside of the policy's 12 consecutive month

21   limitation on coverage. Case law interpreting similar business income provisions in insurance

22   policies support this finding. *See Shaw Mortgage Corp. v. Peerless Ins. Co.*, 615 F. Supp. 2d

23   1172, 1178 (S.D. Cal. 2009) (interpreting similar provision and stating that "[t]he period of

24   recovery ends either when the Period of Restoration ceases or upon the expiration of the 15–month

25   period set forth in the Platinum Endorsement, *whichever comes first*.") (emphasis in original*);

26   Jardine v. Maryland Cas. Co.*, 823 F. Supp. 2d 955, 966 (N.D. Cal. 2011) (construing similar

27   language and denying business income compensation claim because "[t]he Policy expressly

28   provides that the period of recovery starts to run on the date of the loss" not the date when repairs

United States District Court
Northern District of California

1    commence).  Patel has not offered any evidence or authority that demonstrates otherwise, and

2    therefore fails to raise a genuine dispute of material fact.  Summary judgment on Patel's business

3    income claim for losses incurred in 2014 is GRANTED.

4          **III. THE FENG SHUI CONSULTANT COSTS ARE NOT COVERED UNDER THE**

5    **POLICY**

6          American Economy asserts that the feng shui consultant costs are not covered because

7    such services do not arise from "direct physical loss of or damage to Covered Property" and are

8    not "Extra Expense" under the policy.  Br. 20-22.  Patel contends that the words "direct physical

9    loss" include feng shui services because "in order for Patel to replace the damaged personal

10   property she utilized feng shui which she first utilized when she first placed the property."  Opp.

11   15.  Patel also argues that "feng shui should have been covered as an extra expense" because the

12   policy is "vague and unclear as to what is included in extra expense" and "simply does not specify

13   that feng shui services utilized by an insured in the past would not be compensable . . . ."  Opp. 16,

14   18.  Patel does not assert that feng shui consultant services fall under any other provisions in the

15   policy.

16         The term "direct physical loss" is not defined in the policy.  Neither party submitted

17   evidence suggesting that the phrase "direct physical loss" has a specific or technical meaning.

18   Accordingly, I must interpret these words in their ordinary and popular sense.  *AIU Insurance Co.*

19   *v. Superior Court*, 51 Cal.3d 807, 274 (1990) (under California law, courts must look to the plain

20   meaning of the policy terms, relying upon "the clear and explicit meaning of the [policy]

21   provisions, interpreted in their ordinary and popular sense.").  The word "physical" is defined as

22   "of or relating to material nature, or to the phenomenal universe perceived by the senses;

23   pertaining to or connected with matter; material; opposed to *psychical, mental, spiritual*."  Oxford

24   English Dictionary 744 (2nd ed. 2001) (emphasis in original).  *See also Merriam Webster's*

25   *Collegiate Dictionary* 935 (11th ed. 2003) (defining physical as "having a material existence:

26   perceptible esp. through the senses and subject to the laws of nature" and "of or relating to

27   material things").  Courts have interpreted the words "direct physical loss" and similar provisions

28   in insurance contracts to mean damage to tangible, material objects.  *See, e.g., Ward Gen. Ins.*

*Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (2003) (holding that loss of computer data is not "direct physical loss" and defining "direct physical loss" in insurance policy as loss of an object having "a material existence, formed out of tangible matter, and [] perceptible to the sense of touch."); *Seagate Technology, Inc. v. St. Paul Fire and Marine Ins. Co.*, 11 F. Supp .2d 1150 (N.D. Cal. 1998) (loss of customer data not covered under insurance policy which provided coverage for "physical damage to tangible property").

Patel does not provide any evidence demonstrating that feng shui consultancy fees qualify as a "direct physical loss."  Patel used a feng shui consultant to "restore energy balance" and determine "placement of furniture and dealing with forces of Qi."  Atwood Decl., Ex. L; Opp. 15. Such services do not meet the plain meaning of the terms "direct physical loss."

That Patel chose to use a feng shui consultant does not mean that the expense for those services were "necessary" "[t]o avoid or minimize the suspension of business" as defined under the "Extra Expense" provision of the policy.  Hager Decl. Ex A at 00022.  She argues that the policy is "vague" because it does not specifically exclude coverage for feng shui consultants. Accepting her argument would lead to the illogical result that American Economy must explicitly define all possible services that do not fall under its coverage. *Century Sur. Co. v. Casino W., Inc.*, 677 F.3d 903, 908 (9th Cir. 2012) ("[a] contract, such as an insurance policy, should not be construed so as to lead to an absurd result.") (citation and quotation marks omitted).  Patel's argument also fails because she does not identify any words in the policy that are allegedly ambiguous.  *Shaw*, 615 F. Supp. 2d at 1176 ("A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole.") (citation omitted).  I will not adopt an absurd interpretation of the policy to create an ambiguity where none exists. *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 563 F.3d 777, 779 (9th Cir. 2009) ("We will not artificially create ambiguity where none exists.  If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.") (citation and quotation marks omitted).

Because Patel has failed to provide evidence that the cost of feng shui consultant services

United States District Court
Northern District of California

1  are a "direct physical loss" or a "necessary" "extra expense" under the terms of the policy, she

2  does not meet her burden of showing that there is a genuine dispute of material fact whether the

3  feng shui consultant fee falls within the policy's coverage. *Cooper v. Travelers Indem. Co. of*

4  *Illinois*, No. 01-2400 VRW, 2002 WL 32775680 (N.D. Cal. Nov. 4, 2002) ("An insured bears the

5  burden of proving that a loss falls within the basic scope of coverage afforded by the policy.").

6  Summary judgment with respect to the feng shui consultant costs is GRANTED.

7  **IV. THE UNDISPUTED FACTS DO NOT EVIDENCE BAD FAITH BY AMERICAN**

8  **ECONOMY**

9        American Economy seeks dismissal of Patel's second cause of action for breach of the

10  implied covenant of good faith and fair dealing. American Economy asserts that there is no

11  evidence that it acted in bad faith when it denied coverage for business income losses incurred in

12  2014. Br. 22-24. American Economy also asserts that there is no evidence that it acted in bad

13  faith when it partially denied coverage for "the remaining disputed claims," including, "water

14  damage, panel installation, vinyl flooring and baseboard replacement." Br. 22.

15        Patel's opposition brief focuses solely on whether American Economy acted in bad faith in

16  denying the claim for 2014 lost business income. Patel argues that "American Economy

17  disregarded the need to relocate [Patel's] dental practice" and "knew or should have known about

18  this information but then failed to properly advise [Patel]" in order "to reduce the indemnity

19  exposure." Opp. 6, 11.

20        "Every insurance contract implies a covenant of good faith and fair dealing." *Helus v.*

21  *Equitable Life Assur. Soc'y of U.S.*, 309 F. Supp. 2d 1170, 1183 (N.D. Cal. 2004) (citation

22  omitted). "The implied promise requires each contracting party to refrain from doing anything to

23  injure the right of the other to receive the agreement's benefits." *Love v. Fire Ins. Exch.*, 221 Cal.

24  App. 3d 1136, 1151 (1990). "Thus, when benefits are due an insured, delayed payment based on

25  inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the

26  amounts legitimately payable and numerous other tactics may breach the implied covenant

27  because it frustrates the insured's primary right to receive the benefits of his contract--i.e., prompt

28  compensation for losses." *Id*. "In order to establish a breach of the implied covenant of good faith

10

1   and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were

2   withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause.

3   The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable."

4   *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love*, 221 Cal. App. 3d at

5   1151).

6   **A.  The Bad Faith Claim for Denial of Business Income Losses Incurred in 2014**

7   **Fails as a Matter of Law**

8   "[B]ecause a contractual obligation is the underpinning of a bad faith claim, such a claim

9   cannot be maintained unless policy benefits are due under the contract." *Waller v. Truck Ins.*

10  *Exch., Inc.*, 900 P.2d 619, 639 (1995) (affirming appellate court's decision that plaintiffs could not

11  assert a valid bad faith claim because there was no contractual liability on the part of insurance

12  company for claims) (citation omitted).  As explained above, American Economy properly denied

13  the claim for 2014 business income losses under the policy.  Therefore Patel may not assert a

14  cause of action for breach of the implied covenant of good faith and fair dealing for denial of that

15  claim.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1158 (9th Cir. 2002) ("if there is

16  no potential for coverage under the policy, a claim for bad faith cannot be brought.") (citing

17  *Waller*, 900 P.2d at 639) (quotation marks omitted).  Consequently, Patel's claim fails and

18  summary judgment is proper as a matter of law.

19  **B.  The Undisputed Facts Demonstrate That There Are Genuine Disputes**

20  **Regarding Patel's Other Claims**

21  Patel's opposition brief does not address whether American Economy acted in bad faith

22  regarding the water damage, panel installation, vinyl flooring and baseboard replacement, or

23  whether there are any other remaining claims American Economy denied in bad faith.  The

24  undisputed facts demonstrate that American Economy did not act unreasonably in denying these

25  claims.

26  Even where benefits are due, summary judgment against the insured on a bad faith claim

27  may be appropriate if the insurer's conduct was reasonable.  *Franceschi v. American Motorists*

28  *Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988).  "Because the key to a bad faith claim is whether

United States District Court
Northern District of California

11

1    denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if

2    the defendant demonstrates that there was a genuine dispute as to coverage." *Feldman v. Allstate*

3    *Insurance Company*, 322 F.3d 660, 669 (9th Cir. 2003) (citation omitted).  "[A]n insurer denying

4    or delaying the payment of policy benefits due to the existence of a genuine dispute with its

5    insured as to the existence of coverage liability or the amount of the insured's coverage claims is

6    not liable in bad-faith even though it might be liable for breach of contract.  *Wilson v. 21st*

7    *Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007).  "[T]he standard for determining whether a dispute

8    is 'genuine' under this doctrine is entirely objective.  Disposition turns on whether the insurer can

9    establish that, at the time it disputed the claim, and given what it knew or should have known, a

10   carrier, reasoning objectively, could rationally have taken the positions on the issues that the

11   defendant took." *Bernstein v. Travelers Ins. Co.*, 447 F.Supp.2d 1100, 1110 (N.D. Cal. 2006).

12           Based on the undisputed evidence, I cannot conclude that American Economy acted

13   unreasonably.  American Economy sought out the evidence necessary to properly adjust Patel's

14   claim, requested documentation from Patel, and sent follow-up letters when the documentation

15   was not forthcoming.  *See* Atwood Decl., Exs. Q, R.  Patel has not put forth any evidence that

16   American Economy conducted an inadequate investigation with respect to these claims,

17   unreasonably delayed its claim determination, exhibited any "oppressive conduct," or frustrated

18   her right to compensation.  *Love*, 221 Cal. App. 3d at 1151.  The undisputed evidence also

19   demonstrates that "genuine disputes" existed on Patel's denied claims.   American Economy

20   investigated Patel's claims and determined that some claims were covered by the policy, but that

21   other claims were not covered or were not valid.  *See* Atwood Decl. Exs. M, S (detailing approved

22   and rejected claims).  American Economy gave detailed explanations for its findings.  *Id.*  While it

23   remains to be resolved whether denial of the claims breaches the terms of the insurance policy,

24   nothing in the record indicates that American Economy's findings were not based on a genuine

25   dispute as to the validity of those claims.  Summary judgment on Patel's cause of action for breach

26   of the implied covenant of good faith and fair dealing is GRANTED.

27      **V.  PUNITIVE DAMAGES**

28      "Without a bad faith claim, there can be no punitive damages." *Helus*, 309 F. Supp. 2d at

*United States District Court*
*Northern District of California*

1    1185 (N.D. Cal. 2004).  Therefore Patel's request for punitive damages also fails.

2

3                                    **CONCLUSION**

4           Patel's claims for business income loss in 2014 and feng shui consultant services are not

5    covered under the policy; Patel's second cause of action for breach of the implied covenant of

6    good faith and fair dealing fails as a matter of law; and Patel's request for punitive damages has no

7    merit.  American Economy's motion for partial summary judgment is GRANTED.

8           **IT IS SO ORDERED**.

9    Dated: May 8, 2014

10                                   _____

11                                   WILLIAM H. ORRICK
                                     United States District Judge

12

United States District Court
Northern District of California